# In the United States Court of Federal Claims

No. 05-143 C
(Filed: February 3, 2006)

| | | |
|---|---|---|
| **ERNEST LONG, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | * * * * * * * * * * * | Waiver of FLSA rights; Waivers must be explicit, clear and unmistakable; Under appropriate circumstances, private sector employment cases may be used as persuasive authority in the federal sector employment context |

*Robert A. Jones,* Chamberlain, Kaufman & Jones, Albany, NY, counsel of record for Plaintiffs, with whom was *Alan S. Kaufman*, Of Counsel.

*David B. Stinson*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Mark A. Melnick*, Assistant Director.

## OPINION AND ORDER

**DAMICH,** Chief Judge.

## I. Introduction

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56(b) of the United States Court of Federal Claims ("RCFC"). Defendant argues that Plaintiffs' claims for overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), are precluded because Plaintiffs' union, on their behalf, entered into a collective bargaining agreement with Plaintiffs' employer, which covers how Plaintiffs are to be compensated for time spent caring for their assigned canines. In opposition, Plaintiffs argue that FLSA rights may not be waived through a collective bargaining agreement. Alternatively, Plaintiffs assert that even if FLSA rights are waiveable, the collective bargaining agreement at

issue does not waive their FLSA rights because it does not represent an explicit, clear and unmistakable waiver as is required. For the reasons discussed herein, Defendant's motion is DENIED.

## II. Background

Plaintiffs[1] are employed with the National Capital Region, United States Park Police ("U.S. Park Police") in a dual role as officers and canine handlers within the Department of the Interior, National Park Service. *See* Compl. ¶ 3; *see also* Def.'s Supplemental Br. at 1; Pls.' Supplemental Br. at 1. Plaintiffs filed suit under the FLSA to recover unpaid overtime compensation. Compl. ¶ 1. Specifically, Plaintiffs allege that Defendant violated Section 207 of the FLSA, which requires employers to pay employees for work in excess of 40 hours per given work week at a rate "not less than one and one-half times the regular rate at which [the employee] is employed." *Id.* ¶ 22; 29 U.S.C. § 207(a)(1), (b). Plaintiffs assert that they are owed overtime compensation because they were required to provide for the care of their assigned canines at their personal residences when off duty and the time spent was in addition to their normal 40-hour work week. Pls.' Opp'n at 10. Plaintiffs seek damages under Section 216(b), which provides for the recovery of unpaid overtime, liquidated damages, interest, and attorneys fees. 29 U.S.C. § 216(b).

Plaintiffs' union is the Fraternal Order of Police ("FOP"). The FOP and Plaintiffs' employer, the U.S. Park Police, entered into two agreements that are relevant to this matter. On February 23, 1999, the FOP and the U.S. Park Police entered into an agreement entitled Agreement 99A-01 ("CBA"), which applies solely to those U.S. Park Police officers who also serve as canine handlers. Def.'s Mot. at Ex. 013. The scope of the CBA is the care of the assigned canines and the general compensation for providing such care. *Id.* Several months after the parties executed the CBA, on July 28, 1999, the FOP and the U.S. Park Police entered into another agreement pertaining to Plaintiffs, but which also applies to all U.S. Park Police officers generally. *Id*. at Ex. 015-069. This agreement is entitled Labor Management Agreement ("General CBA") and appears to cover all employment related matters. *Id.*

---

[1]There are six Plaintiffs involved in this case. Defendant's motion, however, does not apply to Plaintiff John Guarino because he is a supervisor and, thus, is not covered by the collective bargaining agreement. In its motion, Defendant initially argued that Mr. Guarino's claim should nonetheless be dismissed because he is currently a plaintiff in another pending case with identical claims. In their opposition, Plaintiffs submitted an affidavit of the attorney (Ms. Molly Ann Elkin) working on the other case Mr. Guarino is involved in, and she stated that the parties are engaged in settlement negotiations and that in the event settlement is reached, the claim pursued by Mr. Guarino here will be excepted out. Pls.' Opp'n at Ex. 18. As a result, the parties agree that this case can be stayed as it pertains to him pending the resolution of the settlement agreement in the other case.

Section 4 of the CBA is particularly relevant to Plaintiffs' FLSA claims. *Id.* at Ex. 013. It provides:

> Canine handlers are required to provide for the care and feeding of their assigned canines at their residences. Officers will be compensated at the rate of 1/4 hour compensatory time per *workday* <u>for the canine</u> for the care and feeding of the canine. Canine handlers will be compensated at the rate of 1/2 hour compensatory time per *non-workday* <u>for the canine</u>, for the care and feeding of the canine, unless the canine is kenneled. Compensatory time will be submitted cumulatively at the conclusion of each pay period.

*Id.* (emphases added; underscore in original).

Although the CBA uses the terms "Canine handlers" and "Officers" interchangeably, Section 4, in its entirety, applies to Plaintiffs, as the parties agree that Plaintiffs serve in this dual role. *See* Compl. ¶ 3; *see also* Def.'s Supplemental Br. at 1; Pls.' Supplemental Br. at 1. The CBA provides Plaintiffs with 15 minutes of compensatory time for each *workday* and 30 minutes of compensatory time for each *non-workday* for the time spent caring for the canines. Def.'s Mot. at Ex. 013. Defendant asserts that the distinction in the amount of compensatory time provided for workdays and non-workdays exists because Plaintiffs are given plenty of time during their workday shifts to care for their canines and, thus, 15 minutes is enough to cover any additional time spent when off-duty on a workday. In total for both workdays and non-workdays, Plaintiffs receive 2.5 hours of compensatory time each week. *See id.*

In their declarations, Plaintiffs allege that the majority of time they devote toward caring[2] for their canines is spent on their off-duty time and that the time spent "far exceeds" the "2.5 hours" allotted to them per week. *See* Pls.' Opp'n at Ex. 20, 23, 28, 31, 34 ¶ 7. Moreover, Plaintiffs allege that the CBA compensates them for the 2.5 hours at their regular hourly rate rather than at an overtime rate even though the 2.5 hours is in excess of their normal 40-hour work week. *See id.* at Ex. 20, 23, 28, 31, 34 ¶ 8. Plaintiffs posit that their employer has never instructed them to limit the amount of off-duty time spent on canine-related duties. *See id.* at Ex. 20, 23, 28, 31, 34 ¶ 9. Accordingly, Plaintiffs seek compensation for the time worked in excess of the 2.5 hours per week at the overtime rate of time and a half and seek an additional half-time compensation for the overtime hours that were compensated at the regular hourly rate.

In its motion for summary judgment, Defendant argues that Plaintiffs' FLSA claims are precluded by the CBA. Def.'s Mot. at 4. Plaintiffs oppose the motion and argue that FLSA rights may not be waived through a collective bargaining agreement. Pls.' Opp'n at 3. Alternatively, Plaintiffs argue that even if waiver is possible, it must be explicit, clear and unmistakable. *Id.* at 14. Plaintiffs assert that the CBA does not meet this level of clarity. *Id.*

---

[2]*See* Pls.' Opp'n at Ex. 19, 22, 25, 27, 30, 33 ¶ 2 (stating that as canine handlers, their duties include: boarding the dogs at their personal residences, cleaning up after the dogs, feeding the dogs, exercising the dogs, training the dogs, bathing the dogs, and grooming the dogs).

## III. Legal Standard

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Jay v. Sec'y, DHHS,* 998 F.2d 979, 982 (Fed. Cir. 1993). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Jay,* 998 F.2d at 982. Once the moving party makes the requisite showing, however, the burden then shifts to the non-movant to establish the existence of a genuine issue that can only be resolved at trial. *See Novartis Corp. v. Ben Venue Lab.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). The court must resolve any doubts regarding factual issues in favor of the non-moving party and draw all reasonable inferences in its favor. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed. Cir. 1995). However, summary judgment must be entered against a party who fails to sufficiently establish an essential element to that party's case where that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (internal quotations omitted). In order for a factual dispute to be genuine, the evidence must be such that a reasonable jury or trier of fact could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248 (1986).

## IV. Discussion

### A. The Arguments of the Parties

Defendant argues that the CBA precludes Plaintiffs from pursuing their FLSA claims because it reflects an agreement between Plaintiffs' exclusive representative and Plaintiffs' employer on the issue of compensation for caring for the canines. Def.'s Mot. at 5. In support, Defendant asserts that although Plaintiffs have filed suit alleging FLSA violations, they are really attempting to collaterally attack the express terms of a contractual agreement. *Id.*

In opposition, Plaintiffs argue that FLSA rights may not be waived through a collective bargaining agreement. Pls.' Opp'n at 12. Alternatively, Plaintiffs argue that even if FLSA rights are waiveable, the CBA does not waive their rights because it does not represent an explicit, clear and unmistakable waiver as is required. *Id.* at 14. Plaintiffs assert that the CBA does not even remotely discuss the subject of waiver. *Id.* According to Plaintiff, the "agreement provides certain compensation for canine handlers and nothing more." *Id.*

In its reply, Defendant addresses the two issues raised by Plaintiffs. In response to Plaintiffs' argument that FLSA rights are not waiveable, Defendant argues that the "present case does not involve waiver, but rather resolution by agreement to reimburse employees for off-duty work." Def.'s Reply at 8. As such, Defendant asserts that the cases cited by Plaintiff dealing with waiver are inapplicable. *Id.* Defendant concludes by arguing that the CBA should be enforced as written. *Id.* In response to Plaintiffs' alternative argument that waivers must be explicit, clear and unmistakable, Defendant argues that this standard was

established by the Supreme Court in private sector employment cases, which are inapplicable in the federal employment context. *Id.* at 5. In support, Defendant asserts that the Federal Circuit's ruling in *O'Connor v. United States*, demonstrates that private sector cases are inapplicable in the federal employment context because federal employees are represented by unions and are subject to collective bargaining agreements pursuant to the Civil Service Reform Act ("CSRA"). *Id.* (citing 308 F.3d 1233, 1242-43 (Fed. Cir. 2002). Defendant alternatively argues that to the extent the standard does apply, it "does not rely upon some general language to effectuate a waiver, but rather an agreement that expressly sets forth the mechanism by which employees will be compensated for their off-duty work." *Id.* at 8.

**B. Waiver Is the Issue Before the Court**

Despite Defendant's assertion to the contrary, the precise issue before the court is waiver. If the court finds that the CBA precludes or bars Plaintiffs from pursuing their FLSA rights, by implication, the ruling would amount to a finding that Plaintiffs relinquished or waived their statutory rights by entering into the CBA. However, in light of Plaintiffs' argument that the CBA does not even represent a waiver of their rights, the court will first determine whether the waiver standard is applicable here, and if so, whether the CBA represents an explicit waiver of Plaintiffs' statutory rights.

**C. Even If A Union *May* Waive its Members' FLSA Rights, Any Such Waiver Must Be Explicit, Clear and Unmistakable**

The waiver standard asserted by Plaintiffs is derived from the Supreme Court's ruling in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998). *Wright* involved a *private sector* employment dispute in which the Court held that although the statutory right to a judicial forum for discrimination claims under the Americans with Disabilities Act may be waiveable, it is unnecessary for the court to make this determination because the collective bargaining agreement "does not contain a *clear and unmistakable waiver* of the covered employees' rights . . . ." *Id.* at 82 (emphasis added). Of particular relevance to this case is the Court's statement wherein it indicated that protection from ambiguous or unclear waivers is *even more necessary* when a "substantive right" is involved, as here. *See id.* at 80 (stating although the right to a judicial forum "is not a substantive right . . . [it] is of sufficient importance to be protected against less-than-explicit union waiver in a CBA") (citing *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 709-10 (1983) (holding that although a union may waive a member's substantive statutory right under the National Labor Relations Act to be free from having a *private* employer discourage membership in any labor organization, such waiver did not occur because such waiver "must be established clearly and unmistakably") (emphasis added). Underlying both of these Supreme Court cases is the sentiment that courts should not infer a waiver of statutory rights unless the waiver is "explicitly stated." *See Wright*, 525 U.S. at 80 (citing *Metro. Edison*, 460 U.S. at 708) (stating "[w]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is *explicitly stated*. More succinctly, the waiver must be *clear and unmistakable*.") (emphases added). Although both of these cases involved private sector employment disputes, the Court did not expressly confine its holdings to the private sector.

Despite the lack of any indication in *Wright* or *Metropolitan Edison* that the rulings should be confined to the private sector, Defendant argues that the waiver standard is inapplicable here because the

court is dealing with a federal employment dispute, unlike in those cases. Def.'s Reply at 5. In support, Defendant argues that the Federal Circuit's ruling in *O'Connor v. United States*, demonstrates that private sector cases are distinct from federal sector cases because federal employees are represented by unions and are subject to collective bargaining agreements pursuant to the CSRA. *Id.* (citing 308 F.3d 1233, 1242-43 (Fed. Cir. 2002). An examination of *O'Connor*, however, reveals that Defendant's interpretation is simply too broad.

*O'Connor* does not stand for the proposition that private sector cases, as a matter of law, are inapplicable to the federal sector. In reaching its determination, the Federal Circuit did not consider the legal issue that is currently before this court–whether waivers must meet a certain level of clarity to be enforceable. Rather the Federal Circuit's ruling concerned solely whether FLSA rights may be relinquished under the doctrine of accord and satisfaction where the parties enter into a settlement agreement through a CSRA-governed administrative grievance process. *O'Connor*, 308 F.3d at 1244. The court held that "a settlement agreement negotiated pursuant to the CSRA and a CBA" and made in the administrative grievance context constituted a valid accord and satisfaction. *Id.* at 1244, 1241. In determining that such rights could be relinquished, the court stated that the *private sector* cases finding otherwise were not *binding* on the court because those cases did not involve settlements reached in a grievance process governed by the CSRA, unlike the settlement before the court. *Id.* at 1242-44 (stating that "private sector case law is not dispositive of federal labor disputes"). According to the Federal Circuit, a settlement agreement that resulted through a process governed by the CSRA has certain guarantees of reliability and trustworthiness, which make such agreements distinct from those in the private employment sector. *See id.* at 1243-44. When placed in context, *O'Connor* merely recognized that private sector cases are not binding precedent and, thus, should not be utilized where the circumstances involved are dissimilar to those in the federal sector. The court did not, however, bar the use of private employment cases as persuasive authority where the circumstances in both the private and federal sectors are sufficiently analogous.

In addition, and as recognized by Judge Hewitt in *Bull v. United States*, a case similar to the one before the court, "[t]he dispute in *O'Connor* did not involve the terms of the collective bargaining agreement itself [as here] but rather the terms of the settlement agreement executed during litigation by the parties subject to the collective bargaining agreement." 65 Fed. Cl. 407, 411 (Fed. Cir. 2005) (citing *O'Connor*, 308 F.3d at 1237-39) (brackets added). Thus, not only are the legal issues significantly different in this case, but the facts in *O'Connor* are entirely distinguishable from those before the court.

Of particular relevance is the fact that there are significant similarities among the private sector plaintiffs involved in *Wright* and *Metropolitan* and the federal sector Plaintiffs involved here. Just like the federal employees here, those private employees were also represented by unions and were subject to collective bargaining agreements. Although private employees are not governed by the CSRA, the applicability of the CSRA in the federal employment context is a non-factor where it does not provide the federal employee with any additional protection than a private employee would have under applicable law. Here, Defendant asserts that Plaintiffs waived their FLSA rights to overtime compensation. Unlike the circumstances in *O'Connor* where the court found that the CSRA offered certain protections when a claim was pursued through the grievance process rather than in court, the CSRA does not offer any additional protection under these circumstances. For example, the CSRA does not expressly require that

such waivers meet a certain level of clarity. Thus, under these precise circumstances, the CSRA does not provide federal employees with any advantages over their private counterparts. Accordingly, because private and federal employees are on an equal footing on this issue, there is simply no logical justification for manufacturing a distinction between federal and private employees, which would require unions representing private employees to be clear about such waivers, but which would allow unions in the federal employment context to disregard such a requirement of clarity.

When the policy considerations underlying the Supreme Court's rulings are considered, it is evident that the Court based its reasoning on the premise that statutory rights are simply too important to be deemed waived without an explicit statement to that effect. As the Court reached this conclusion despite the presence of union representation and collective bargaining agreements, it follows that the Court would extend such a requirement of clarity to a federal employment setting with analogous circumstances. Therefore, in order for the court to find that Plaintiffs waived their FLSA rights, the waiver must be "explicitly stated." *Wright*, 525 U.S. at 80 (citing *Metro. Edison*, 460 U.S. at 708).[3]

**D. The Purported Waiver Is Not Explicitly Stated**

The court must now turn to the language of the CBA to determine whether the waiver is "explicitly stated" or "[m]ore succinctly," whether it is "clear and unmistakable." *Wright*, 525 U.S. at 80 (citing *Metro. Edison*, 460 U.S. at 708). The CBA provides:

> **Section 4:** Canine handlers are required to provide for the care and feeding of their assigned canines at their residences. Officers will be compensated at the rate of 1/4 hour compensatory time per *workday* <u>for the canine</u> for the care and feeding of the canine. Canine handlers will be compensated at the rate of 1/2 hour compensatory time per *non-workday* <u>for the canine</u>, for the care and feeding of the canine, unless the canine is kenneled. Compensatory time will be submitted cumulatively at the conclusion of each pay period.

Def.'s Mot. at Ex. 013 (emphases added; underscore in original).

Although this provision *does* "expressly set[] forth the mechanism" by which Plaintiffs will be compensated for caring for the canines, as Defendant asserts, it does not *explicitly* waive Plaintiffs' FLSA rights to overtime compensation. Def.'s Reply at 8.

First, the provision does not even contain the word, "*overtime*." Second, the provision does not state that Plaintiffs will not be paid overtime for the time spent caring for their canines that exceeds their

---

[3]Other courts within the U.S. Court of Federal Claims have also extended the explicit, clear and unmistakable waiver requirement to federal employment disputes. *See Jaynes v. United States*, 68 Fed. Cl. 747, 754-55 (2005) (adopting the "clear and unmistakable" waiver standard); *Bull v. United States*, 65 Fed. at 413 (same); *Mudge v. United States,* 59 Fed. Cl. 527, 534-35 (2004) (same); *Curtis v. United States*, 59 Fed. Cl. 543, 549 (2004) (same).

normal 40-hour work week. Third, it does not limit the amount of time Plaintiffs may spend caring for their assigned canines nor does it discuss how Plaintiffs are to be paid for time spent in excess of the prescribed time. Fourth, the provision does not provide that the indicated compensation includes overtime compensation. Fifth, and in addition to the lack of any "clear and unmistakable" intent to trump Plaintiffs' rights to overtime, the provision does not even discuss the statutory rights purportedly being waived. *See Wright*, 525 U.S. at 80 (finding the lack of any "explicit incorporation of [the] statutory . . . requirements" important in reaching the determination that the waiver was not "clear and unmistakable"). As it does not appear that the subject of waiver is even addressed in this provision, it cannot represent an explicit waiver of Plaintiffs' substantive statutory rights to FLSA compensation.

Moreover, and in addition to the fact that the CBA does not meet the Supreme Court's waiver standard, the General CBA expressly provides that overtime will be paid in accordance with law. *See* Def.'s Mot. at Ex. 041. Specifically, Section 10.5 of the General CBA is entitled "*Overtime*," and provides: "[a]n officer required to perform any work or duty before or after his/her scheduled work hours will receive compensation for all such work or duty in accordance with law." *Id.* (emphasis added). As Plaintiffs are "officers," as used here, and are "required" to perform the off-duty care of their assigned canines, the General CBA *explicitly* requires that they are to be paid overtime in accordance with the FLSA. Def.'s Supplemental Br. at 1-2 (stating that the term "officer" applies to Plaintiffs and noting that the term when used in conjunction with the term canine handler "refer to officers assigned to specially trained canines for the performance of their duties"); *see* Pls.' Supplemental Br. at 1-2. As such, even if the CBA did satisfy the waiver standard, which it does not–this *subsequent* agreement that the parties executed five months after they entered into the CBA evinces an "explicitly stated" contrary intent as the term "[o]vertime" is actually used, weighing against finding a "clear and unmistakable" waiver. *See Barrentine v. Ark.*, 450 U.S. 728, 740-41 (1981) (holding in the private sector context, that "FLSA rights cannot be abridged by contract or otherwise waived . . ." and stating that in any event, "congressionally granted FLSA rights take precedence over *conflicting provisions* in a collectively bargained compensation arrangement") (emphasis added).

Accordingly, the court finds that the CBA's terms do not satisfy the waiver standard. In light of this finding, the court need not consider the issue of whether a union may waive its members' FLSA rights as a matter of law.

## V. Conclusion

In view of the foregoing, the court hereby ORDERS the following:

1. Defendant's May 20, 2005, Motion for Summary Judgment is DENIED.

2. The parties shall file a joint status report on or before **March 3, 2006**, wherein they inform the court on how they wish to proceed. In addition, the parties shall inform the court whether they believe the case should be stayed as it pertains to Plaintiff John Guarino. In so doing, the parties shall inform the court of the status of the pending settlement negotiations in *Abbatantuono v. United States*, Fed. Cl. No. 02-479C.

s/Edward J. Damich
EDWARD J. DAMICH
Chief Judge